IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| L.M., a minor, by and through his legal guardian, Rahkeyia Campbell, | ) ) ) ) | CASE NO.: |
| 4236 W. 23rd St., Cleveland, Ohio, 44109, | ) ) ) | JUDGE: |
| And, | ) ) ) | |
| E.M., a minor, by and through her legal guardian, Rahkeyia Campbell, | ) ) ) ) | **COMPLAINT** *(Jury demand endorsed herein)* |
| 4236 W. 23rd St., Cleveland, Ohio, 44109, | ) ) ) ) | |
| And, | ) ) ) | |
| RAHKEYIA CAMPBELL, | ) ) ) | |
| 4236 W. 23rd St., Cleveland, Ohio, 44109, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| HILTON HOTEL EMPLOYER, LLC, | ) ) ) | |
| 1201 Hays St., Tallahassee, FL, 32301, | ) ) ) ) | |
| And, | ) ) | |

HILTON WORLDWIDE, INC.,  )
)
100 Shockoe Slip, 2nd Floor,  )
Richmond, VA, 23219,  )
)
And,  )
)
EVEREST HOSPITALITY,  )
LLC,  )
)
600 Superior Ave., Suite 2100,  )
Cleveland, Ohio, 44114,  )
)
And,  )
)
CITY OF BROOKLYN,  )
)
8000 Memphis Ave.,  )
Brooklyn, Ohio, 44144,  )
)
And,  )
)
MARIO SPREMULLI,  )
)
8000 Memphis Ave.,  )
Brooklyn, Ohio, 44144,  )
)
And,  )
)
JOSEPH CHESSAR,  )
)
8000 Memphis Ave.,  )
Brooklyn, Ohio, 44144,  )
)
And,  )
)
STEVE REITZ,  )

8000 Memphis Ave.,     )
Brooklyn, Ohio, 44144,    )
              )
And,           )
              )
BRIANNA MOLNAR,    )
              )
8000 Memphis Ave.,     )
Brooklyn, Ohio, 44144,    )
              )
And,           )
              )
DOE DEFENDANTS 1-10;   )
              )
[addresses unknown]     )
              )
     Defendants.   )

Now come Plaintiffs L.M., a minor, by and through his legal guardian, Rahkeyia Campbell ("L.M."), E.M., a minor, by and through her legal guardian, Rahkeyia Campbell ("E.M."), and Rahkeyia Campbell ("Ms. Campbell") (collectively, "Plaintiffs"), and for their Complaint against Hilton Hotel Employer, LLC, Hilton Worldwide, Inc. (collectively, "Hilton"), Everest Hospitality, LLC, ("Everest"), the City of Brooklyn, Mario Spremulli ("Officer Spremulli"), Joseph Chessar ("Officer Chessar"), Steve Reitz ("Officer Reitz"), Brianna Molnar ("Officer Molnar"), and Doe Defendants 1-10 ("Doe Defendants") (collectively, "Defendants") state as follows:

3

## PARTIES

1. E.M. is a minor individual who resides at 4236 W. 23rd St., Cleveland, Ohio, 44109.

2. L.M. is a minor individual who resides at 4236 W. 23rd St., Cleveland, Ohio, 44109.

3. Ms. Campbell is an individual who resides at 4236 W. 23rd St., Cleveland, Ohio, 44109.

4. Hilton Hotel Employer, LLC, is a limited liability company headquartered in the State of Virginia.

5. Hilton Worldwide, Inc. is a corporation headquartered in the State of Virginia.

6. Everest is an Ohio limited liability company, which owns and operates the Hampton Inn Hotel by Hilton, at 10305 Cascade Crossing, Brooklyn, Ohio, 44144 ("the Hampton by Hilton") under the direction of Hilton.

7. The City of Brooklyn is a municipality in the State of Ohio.

8. Officer Spremulli is a police officer employed by the City of Brooklyn.

9. Officer Chessar is a police officer employed by the City of Brooklyn.

10. Officer Reitz is a police officer employed by the City of Brooklyn.

11.    Officer Molnar is a police officer employed by the City of Brooklyn.

12.    Doe Defendants are individuals who are employed by either Everest, Hilton, or the City of Brooklyn and who may be responsible for the conduct set forth in this Complaint, and/or who acted intentionally, negligently, maliciously, in bad faith, or wantonly or recklessly, proximately causing the injuries suffered by Plaintiffs.

## JURISDICTION

13.    Plaintiffs incorporate Paragraphs 1-12 of this Complaint.

14.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case is a civil action arising under 42 U.S.C. § 2000(a), 42 U.S.C. § 1981, and 42 U.S.C. § 1983 pursuant to the Fourth Amendment of the U.S. Constitution.

15.    This Court has supplemental jurisdiction over Plaintiffs' state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because Plaintiffs' state law claims are related to Plaintiffs' federal claims such that they form part of the same case or controversy.

16.    A substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District. Therefore, venue in this District is proper pursuant to 28 U.S.C. § 1391.

## **GENERAL ALLEGATIONS**

17.     Plaintiffs incorporate Paragraphs 1-16 of this Complaint.

18.     Everest owns and operates the Hampton by Hilton, located at 10305 Cascade Crossing, Brooklyn, Ohio, 44144.

19.     Hilton authorizes, directs, implements, and/or ratifies the policies and procedures of the Hampton by Hilton.

20.     On, or about March 9, 2024, Plaintiffs checked into the Hampton by Hilton.

21.     The employees of the Hampton by Hilton saw Plaintiffs when they were checking in and Plaintiffs met its residency requirements.

22.     Shortly after checking in, Plaintiffs went to the pool. There were numerous white children playing in the pool.

23.     Plaintiffs were the only black family in the pool.

24.     Within a few minutes, a manager or employee of the Hampton by Hilton singled out Plaintiffs and kicked Plaintiffs out of the pool.

25.     Any reasons provided for kicking Plaintiffs out of the pool were pretextual. Plaintiffs violated no Hampton by Hilton policies.

26.     Plaintiffs left the pool and were standing in a common area of the hotel near the gym.

27.    A manager of the Hampton by Hilton came and yelled at Plaintiffs screaming "y'all can leave my hotel."

28.    When E.M. asked Ms. Campbell whether they can go back to swim, the manager interjected, stating "no, you're not going back swimming, y'all been swimming all day."

29.    This was not true.

30.    The manager stopped Plaintiffs from using the pool and sent them to their rooms.

31.    Ms. Campbell contacted the corporate office for the Hampton by Hilton and reported Plaintiffs' behavior, lodging complaints related to the manager's conduct, and took the children up to the room as instructed.

32.    Until nearly 8 p.m., Plaintiffs remained in their room. Plaintiffs then attempted to use the pool again.

33.    After a few minutes at the pool, another employee of Everest came to kick Plaintiffs out of the pool again.

34.    L.M. and E.M. begged for a few more minutes, and the employee granted them a few more minutes to swim before they had to leave.

35.   Any reasons provided for kicking Plaintiffs out of the pool the second time were pretextual, and Plaintiffs violated no Hampton by Hilton policies.

36.   At approximately 8:15 p.m., Plaintiffs returned to their room to watch a movie.

37.   By 8:30 p.m. the lights were off, some children were asleep, some children were quietly watching the tv, and there was no excessive noise.

38.   Hampton by Hilton did not give Plaintiffs a warning about any noise, or any obnoxious behavior.

39.   At 10:51 pm, long after Plaintiffs had settled in to watch a movie, a Hampton by Hilton employee called the City of Brooklyn Police Department ("CBPD") to have Plaintiffs removed from the hotel.

40.   The employee indicated to CBPD dispatch that Plaintiffs were "local" and that the Hampton by Hilton kicked Plaintiffs out of the pool.

41.   The employee indicated to CBPD dispatch that he did not know if there were too many individuals in the rooms, or how many individuals were in the rooms.

42. The employee could not articulate to CBPD dispatch a legitimate reason that he was kicking Plaintiffs out of the room.

43. The employee had no legitimate reason to kick Plaintiffs out of the room.

44. CBPD banged loudly on the door of the hotel room at approximately 11:00 PM, waking up Plaintiffs.

45. Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar were standing outside of the door of the hotel room.

46. Officer Chessar had his foot on the door of the hotel room to keep the door open while Plaintiffs were changing their clothes.

47. Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar had no reasonable suspicion that any crime had been committed by Plaintiffs.

48. Officer Chessar demanded that Ms. Campbell produce identification.

49. Ms. Campbell declined to produce identification, given that she and her children had committed no crime. Ms. Campbell indicated that she wanted to call her attorney.

50.    Officer Chessar stated to Plaintiffs "you're detained right now." And added, "I still need your ID whether you call your attorney or not."

51.    While Ms. Campbell was detained and looking or her ID, Ms. Campbell indicated that she would "call the police station," Officer Reitz then stated "well, you'll be talking to us." And stated, "we have to identify you to make sure you don't return to this property."

52.    Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar stood outside the door of the hotel room while they detained Plaintiffs.

53.    Then Ms. Campbell stated, "let me provide my ID, so I can leave." One of the children helped her look for her ID, and she provided it to Officer Chessar.

54.    Ms. Campbell then waited for Officer Chessar to check her identification and background before Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar allowed and directed Plaintiffs to leave the premises.

55.    Plaintiffs were removed from the Hampton by Hilton at approximately 11:30 pm at night and were criminally trespassed.

56.   Plaintiffs are unable to return to the Hampton by Hilton hotel under threat of criminal prosecution as a result of the criminal trespass complaint made by Hampton by Hilton employees.

## CAUSES OF ACTION

### 42 U.S.C. § 1981(a)
### (Against Hilton, Everest, and the Doe Defendants)

57.   Plaintiffs incorporate Paragraphs 1-56 of this Complaint.

58.   Everest, Hilton, and Doe Defendants engaged in racial discrimination in the making and enforcement of the contract between Plaintiffs and Hilton and Everest.

59.   This discrimination was intentional.

60.   Everest, Hilton, and Doe Defendants hindered and terminated the performance of the contract between Plaintiffs, Hilton, and Everest.

61.   Plaintiffs were entitled to the enjoyment of all benefits, terms, and conditions of the contractual relationship between Plaintiffs and Hilton and Everest.

62.   For discriminatory reasons, Everest and Doe Defendants, under the policies under the policies, procedures, and training, or lack thereof, of Hilton, denied Plaintiffs the enjoyment of all benefits, terms, and

conditions of the contractual relationship between Plaintiffs and Everest and Hilton.

63.   Plaintiffs are African American and are therefore members of a protected class.

64.   Plaintiffs had a contract with Everest and Hilton for accommodation.

65.   Plaintiffs met Everest's and Hilton's standard requirements for occupancy.

66.   Plaintiffs were denied accommodations by Everest, Hilton, and Doe Defendants that were available to guests outside of the protected class.

67.   Specifically, Plaintiffs were denied the right to use amenities, services, and common areas that Everest, Hilton, and Doe Defendants make available to its guests, on the same terms and conditions as those other guests.

68.   Other guests outside of the protected class who were engaging in the same or similar conduct as Plaintiffs were not excluded from the pool of the Hampton by Hilton.

69.   Plaintiffs were excluded from the pool.

70.     Other guests outside of the protected class who were engaging in the same conduct as Plaintiffs were not precluded from returning to the pool of the Hampton by Hilton for the rest of the day.

71.     Plaintiffs were precluded from returning to the pool for the rest of the day.

72.     Other guests outside of the protected class who were engaging in the same or similar conduct as Plaintiffs were not told to leave the common areas of the Hampton by Hilton.

73.     Plaintiffs were told to leave the common areas of the Hampton by Hilton.

74.     Other guests outside of the protected class who were engaging in the same or similar conduct as Plaintiffs were not evicted and/or were given a warning before they were evicted from the Hampton by Hilton.

75.     Plaintiffs were evicted from the Hampton by Hilton.

76.     Plaintiffs were given no warning by Everest or Hilton before they were evicted.

77.     Plaintiffs were treated in a markedly hostile manner and in a manner that a reasonable person would find objectively discriminatory.

13

78.   Hilton is responsible for the implementation of policies, procedures, and customs in its hotel franchises.

79.   Hilton is liable as a primary tortfeasor because it authorized and ratified Everest and Doe Defendants' conduct.

80.   Hilton is liable as a primary tortfeasor because it is responsible for implementing the policies, procedures, and training for Everest and Doe Defendants, which it failed to properly do.

81.   Specifically, Hilton maintains a systemic policy and/or custom of profiling black guests in the common areas of its hotel franchises. *See Law v. Hilton Domestic Operating, Co.*, No. 3:20cv145 (DJN), 2020 U.S. Dist. LEXIS 228423, at *22 (E.D. Va. Dec. 4, 2020).

82.   Hilton maintains a systemic policy and/or custom of calling the local police to evict and exclude black people from the common areas of its franchisees' property and properties. *See* https://www.cbsnews.com/news/black-family-sues-hilton-after-police-called-for-hotels-billing-error/ ("The incident was not an isolated one, the Corbett suit claimed. "There is a history of similar incidents involving African American guests and invitees at Hilton and Hilton franchise hotels throughout the United States, continuing up to and

indeed beyond the time of the Corbetts' incident," according to the legal document "Hilton's employees, agents and apparent agents use security guards and local police to challenge and remove African-American guests from Hilton and Hilton franchise properties….Last weekend, a worker at another Hampton Inn in Williamston, North Carolina, lost their job after calling police on a Black guest and her family swimming in the property's pool."); https://www.usatoday.com/story/travel/news/2020/06/29/hampton-inn-employee-fired-calling-cops-black-family-pool/3281804001/

83.    Hilton's unconstitutional policy and custom of profiling, evicting, and discriminating against black guests in its hotel franchises was the moving force behind Everest's and Doe Defendants' unconstitutional and tortious conduct as set forth in this Complaint.

### 42 U.S.C. § 2000(a)
### (Against Hilton, Everest, and Doe Defendants)

84.    Plaintiffs incorporate Paragraphs 1-83 of this Complaint.

85.    At all relevant times, the Hampton by Hilton is a place of public accommodation as a hotel which provides lodging to transient guests within the meaning of 42 U.S.C § 2000a(b)(1).

86.   The Hampton by Hilton's operations affect commerce within the meaning of 42 U.S.C. § 2000(a)(c).

87.   At all times relevant, Plaintiffs were transient guests within the meaning of 42 U.S.C. § 2000(a)(b)(1).

88.   Hilton and Everest engaged in racial discrimination against Plaintiffs in violation of 42 U.S.C. § 2000(a).

89.   Hilton and Everest denied, withheld, and deprived Plaintiffs of their privilege secured under 42 U.S.C. § 2000(a) by denying Plaintiffs full and equal enjoyment of the Hampton by Hilton, a place of public accommodation on the ground of race.

90.   Plaintiffs are members of a protected class.

91.   Plaintiffs attempted to exercise the right to full benefits and enjoyment of a place of public accommodation.

92.   Plaintiffs were denied those benefits and enjoyment by Hilton, Everest, and Doe Defendants.

93.   Plaintiffs were treated less favorably by Hilton, Everest, and Doe Defendants than similarly situated persons – other guests at the Hampton by Hilton, who are not African American.

94.   Everest and Doe Defendants engaged in this conduct pursuant to the policies, procedures, and customs of Hilton, who are directly liable for the unconstitutional acts and omissions of Everest and Doe Defendants.

95.   Hilton's unconstitutional policies and customs of profiling black guests in its hotel franchises was the moving force behind Everest and the Doe Defendants' unconstitutional and tortious conduct.

96.   Hilton was actually and constructively aware of the racial discrimination of Plaintiffs before Plaintiffs were kicked out of the Hampton by Hilton because Plaintiffs called Hilton and told them of the racial discrimination.

97.   Hilton failed to address, stop, or ameliorate the racist and discriminatory treatment of Everest and Doe Defendants once they had knowledge of Everest's and Doe Defendants' conduct.

98.   Upon information and belief, Plaintiffs' report to Hilton exacerbated Everest's and Doe Defendants' racist and discriminatory treatment against Plaintiffs.

99.   By denying Plaintiffs the full use and enjoyment of the services of a place of public accommodation on the basis of race, Hilton and Everest violated 42 U.S.C. § 2000(a).

100.  Plaintiffs have sustained an injury in fact by being criminally trespassed from the Hampton by Hilton.

101.  Plaintiffs' injury is traceable to Hilton's, Everest's, and Doe Defendants' actions.

102.  Plaintiffs' injury can be redressed by favorable legal decision.

103.  There exists a real and immediate threat that Plaintiffs will be wronged again.

104.  Plaintiffs have a right to seek and obtain lodging at the Hampton by Hilton without being discriminated against.

105.  Plaintiffs' residence is in the same county as the Hampton by Hilton.

106.  The Hampton by Hilton is near the airport, which makes it a hotel that Plaintiffs could, and would visit if Plaintiffs were traveling.

107.  Plaintiffs frequently travel near the Hampton by Hilton.

108.  Plaintiffs face a significant likelihood of facing a similar harm upon return to the Hampton by Hilton.

109.  Accordingly, Plaintiffs are entitled to injunctive relief pursuant to 42 U.S.C. § 2000(a).

## R.C. 4112.02(G)
## (Against Everest and Doe Defendants)

110.  Plaintiffs incorporate Paragraphs 1-109 of this Complaint.

111.  The Hampton by Hilton is a place of public accommodation.

112.  Everest is the proprietor of the Hampton by Hilton.

113.  Doe Defendants are employees, keepers, and managers of the Hampton by Hilton.

114.  Everest and Doe Defendants denied Plaintiffs the full enjoyment of the accommodations, advantages, facilities, and privileges of the Hampton by Hilton.

115.  Everest and Doe Defendants acted maliciously, with a state of mind characterized by hatred, ill will, or a spirit of revenge.

116.  As a result of Defendants' conduct, Plaintiffs are entitled to an award of damages - compensatory and punitive, injunctive relief, and all other appropriate relief.

## Intentional Infliction of Emotional Distress
## (Against All Defendants)

117.  Plaintiffs incorporate Paragraphs 1-116 of this Complaint.

118.  Defendants intended to cause, or knew or should have known that their actions would result in, serious emotional distress.

119.  Defendants' conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

120.  Defendants' actions caused severe psychological injury to Plaintiffs that Plaintiffs cannot be expected to endure.

121.  Defendants' conduct was malicious.

122.  As a result of Defendants' conduct, Plaintiffs have been damaged in an amount to be proved at trial.

## 42 U.S.C. § 1983 - False Arrest
### (Against The City of Brooklyn, Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar)

123.  Plaintiffs incorporate Paragraphs 1-122.

124.  Plaintiffs have a Fourth Amendment right against unreasonable search and seizure.

125.  Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar deprived Plaintiffs of that right.

126.  Plaintiffs were detained against their will by Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar,

127. Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar were acting under the color of state law when they detained Plaintiffs.

128. The detention of Plaintiffs by Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar was unlawful because Plaintiffs were detained without reasonable suspicion that they had committed, or were about to commit, a crime, or probable cause.

129. Officer Spremulli's, Officer Chessar's, Officer Reitz's, and Officer Molnar's actions were not objectively reasonable.

130. Plaintiffs were detained by Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar without legal justification.

131. Plaintiffs were detained by Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar for an appreciable amount of time.

132. Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar's actions violated clearly established law, and therefore the City of Brooklyn is not entitled to immunity.

133. Upon information and belief, it is a policy and/or custom of the City of Brooklyn to detain individuals that are trespassed until they provide their identification.

134. This policy or custom was the moving force that served to deprive Plaintiffs of their constitutional rights against unreasonable search and seizure.

135. The City of Brooklyn failed to investigate, train, and supervise Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar.

136. Failures to investigate, train, and supervise Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar by the City of Brooklyn resulted in Officer Spremulli, Officer Chessar, Officer Reitz, and Officer Molnar violating Plaintiffs' fourth amendment rights.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award Plaintiff preliminary and permanent injunctive relief, compensatory damages, attorney fees, costs, punitive damages, and any other available damages in an amount to be proven at trial.

Respectfully Submitted,

/s/ *Jed Chedid*
Jed Chedid, Esq. (#0101457)
Chedid & Co.
38355 Terrell Dr.
North Ridgeville, OH  44039
Phone: (440) 581-2075
jchedid@chedidlegal.com

*Counsel for Plaintiffs*

## **<u>JURY DEMAND</u>**

Trial by jury of the maximum number of jurors permitted is requested.

/s/ *Jed Chedid*
Jed Chedid (0101457)